BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
1301 Clay Street, Room 200C
Oakland, CA 94612-5204
Telephone: (510) 637-3500

Counsel for Defendant REDDEN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. CR 07-0802 VRW |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| v. ) | MEMORANDUM |
| ) | |
| CHARLES REDDEN, ) | Date: August 7, 2008 |
| ) | Time: 2:00 p.m. |
| Defendant. ) | |
| ) | |

## INTRODUCTION

On March 20, 2008, defendant Charles Redden pled guilty to a one count indictment which charges him with a violation of 18 USC §751(a) - escape. Mr. Redden will be sentenced by this Court on August 7, 2008. A pre-sentence investigation report ("PSR") was prepared by United States Probation Officer E. Ann Searles who calculates the advisory guideline range to be 15-21 months based upon adjusted offense level 7 and criminal history category VI. PSR ¶103. She recommends a sentence of 18 months in custody. PSR, Sentencing Recommendation. Meanwhile, the government argues that a sentence of 15 months is appropriate. *See* United States Sentencing Memorandum ("Govt. Memo") at p.3-4. In making this recommendation, the government relies upon the following reasoning:

*U.S. v. Charles Redden*, CR 07-00802 VRW;      - 1 -
Sentencing Memorandum

> given the defendant's continuous incarceration over the past 16 years, the need for him to address his substance abuse issues, as well as the fact that the defendant's chance of success in the community will require slow transition to society, it might be more appropriate for the defendant to begin the transition sooner rather than later. The defendant has recently been accepted into the New Bridge Foundation program which can assist the defendant with his drug addiction.

*Id*. Mr. Redden agrees with the government's reasoning and appreciates its low end recommendation. However, Mr. Redden believes that a sentence of 12 months and 1 day in custody, which is equivalent to a one level deviation from the guideline range, is "sufficient, but not greater than necessary" to address the sentencing factors enumerated in 18 U.S.C. §3553. Mr. Redden submits this sentencing memorandum in support of his request.

Attached to the sentencing memorandum is a letter from Mary Torres (Exhibit A). In addition, a confidential report of psychological evaluation prepared by Jeremy Coles, PhD dated June 16, 2008 ("Coles Report") is being filed concurrently under seal because it contains confidential medical information of Mr. Redden which should not be part of the public record.

## BACKGROUND

### A.    Offense Conduct

On November 1, 2007, defendant Charles Redden was transferred to the Cornell Corrections Residential Re-entry Center ("Cornell") in San Francisco, California as part of his federal sentence. Mr. Redden was scheduled to be released from federal custody on December 31, 2007. On November 9, 2007, Mr. Redden signed out of Cornell to go to the Social Security Administration office. PSR ¶16. He failed to return either later that day or ever. *Id*. A week later, on November 16, 2007, officers from the San Francisco police department found Mr. Redden in Golden Gate Park hiding behind a tree *Id*. at ¶17. He was identified, arrested and returned to federal custody. *Id*.

During his interview, Mr. Redden discussed with the probation officer what caused him to leave Cornell and not return. Mr. Redden, who had been in custody for approximately 16 years at the time that he was released to Cornell, found it to be strange and stressful. PSR ¶21. For example, he did not even know how to use a cell phone. *Id*. Mr. Redden also was informed that he had 15 days to

secure employment. *Id*. Due to the stress, Mr. Redden "felt bad," used illicit drugs and failed to return to the half-way house. *Id*.

While Mr. Redden was a fugitive, he did not make any threats or commit any other crimes. He slept in the park and ate his meals at shelters until his arrest approximately a week later. *Id*.

### B. Personal Background and Mental Health Evaluation

Charles Redden is a 40 year old man whose inauspicious beginnings began with beatings by his father before Charles could even walk. *Id*. at ¶55. When he was still a small child, Mr. Redden's mother next married a man who started sexually molesting Charles while he was still quite young from ages six to nine. *Id*. at ¶56; Coles Report at p.3. The molestation continued as Mr. Redden was later molested by an uncle from ages 13 to 17. *Id*.

Mr. Redden has been in custody continuously for approximately 16 years. PSR ¶41-44. Although initially Mr. Redden was sent to prison for theft offenses, *see* PSR ¶¶38-41, he has managed to remain in custody an additional ten or more years based upon his writing or otherwise communicating threats to federal agents, judges or agencies. PSR ¶¶42-44. The letters and communications all have been readily tracked to Mr. Redden who has usually signed his name and communicated from prison. *Id*.

Over the years, Mr. Redden has been evaluated by a number of mental health professionals who have diagnosed a variety of illnesses.[1] *Id*. at ¶¶68-85; Coles Report at p.4-6. All of the prior forensic reports, as well as Mr. Redden's disciplinary records from custody, were reviewed and considered by Dr. Coles in preparing his June 18, 2008 evaluation. Coles Report at p.2. Dr. Coles opines that Mr. Redden is not afflicted with a psychotic disorder or major mood disorder, which is

---

[1] Attention should be focused on the Coles Report because it encompasses the prior evaluations and is the most reliable indicator of Mr. Redden's present condition. The probation officer apparently places little value on the current evaluation mentioning it in one short paragraph in the PSR. PSR ¶80. Meanwhile the probation officer includes pages and pages of minute detail from evaluations which date back 10 and 20 years in the PSR much of which is not that helpful at this juncture. PSR ¶68-76. As the Court can judge for itself, the Coles Report represents a thorough analysis of Mr. Redden's current mental health and should be given significantly more weight than reports dating back ten years in determining what to do in the future.

Sentencing Memorandum

consistent with some of the prior assessments. *Id*. at p. 9. Rather, according to Dr. Coles "Mr. Redden's primary psychological difficulties emerge from his Borderline Personality Disorder." *Id*. at p.10. Dr. Coles explains that:

> intrinsic to this disorder is a wholly deficient ego structure with limited frustration tolerance and impulse control. Significant dependency conflicts centered on separation and individuation dominate the landscape of individuals with this disorder. . .to a certain extent this helps to explain his ongoing threatening behavior that is ultimately aimed at remaining incarcerated.

*Id*. Dr. Coles thus connects Mr. Redden's behavior disorder to his behavior which "aims at remaining incarcerated." Walking away from Cornell, which is what Mr. Redden did in this case, falls squarely within the conduct described above. In addition, Dr. Coles makes the link between Mr. Redden's personality disorder and his abusive childhood:

> Although individuals with Borderline Personality Disorder are often off-putting and interpersonally difficult to empathize with given their manipulativeness and impulsivity. . . it is important to remember that these maladaptive and regressive personality structures most often have their etiological underpinnings in very traumatic childhoods. In this regard, Mr. Redden's past is no different. He was repeatedly abused as a child, first by a stepfather and then by an uncle . . . His mother provided little to no protection . . .and, in turn, Mr. Redden grew up with no trust in his environment . . . he never learned how to metabolize his own dysphoric emotional states and, in turn, he has led a life of impulsive acting out, generally self-destructive in nature.

Exhibit A at p. 11. Dr. Coles also finds that Mr. Redden meets the diangnosic criteria for Polysubstance Abuse. *Id*. at 10-11. Mr. Redden's drug use is described in the PSR. PSR ¶¶86-93.

Finally, because some of his prior offenses involve threats, Dr. Coles was asked to assess Mr. Redden's potential for violence in the future:

> This examiner administered the HCR-20, an actuarial instrument used to assess risk for future violence. . . [a]lthough predicting future violence with certainty is impossible, it is possible to look at a number of variables that are known to be empirically related to violence in an effort to determine someone's level of risk. . . [t]he HCR-20 was designed . . . to provide some empirical guidance to clinical judgments in the area of violence risk assessment. It is not meant as a substitute for clinical judgment.

> A review of the HCR-20 and the other tests conducted and the documents reviewed reveals Mr. Redden to be a man of low risk for future "hands-on" violence. He has never committed such acts in the past and there is no indication that he possesses a violent core to his personality that is likely to become active in the future. Mr. Redden's past history of violent threats appear to be intrinsic to his Borderline Personality Disorder that leaves him vulnerable to impulsive and manipulative acting out. He self-reported that his previous threats all had the aim of procuring either more custody or different living arrangements. This self-report is consistent with this examiner's overall impression of Mr. Redden and what motivates his behavior.

*Id*. at p. 12.

While he has been incarcerated most recently, Mr. Redden applied to New Bridge Foundation which is a dual-diagnosis residential program which addresses both substance abuse and mental health issues. It is typically an 18 month program which involves a minimum of 6-12 months residential treatment and additional time in transition and outpatient treatment. The United States pretrial and probation offices in this district has a federal contract with the New Bridge Foundation. The director of New Bridge Foundation, after meeting with Mr. Redden and reviewing the report by Dr. Coles, has accepted Mr. Redden into its dual-diagnosis program should the Court decide to send him there.

In setting out his summary and conclusions, Dr. Cole says:

> It is this examiner's unequivocal opinion that Mr. Redden's only chance of success in the community will involve the very slow transition that he seeks. . . Only in a structured and nurturing environment will he stand any chance of learning to live life on life's terms and thereby avoid future incarceration.

*Id*. at p.13.

## DISCUSSION

**A Sentence of Twelve Months and One Day is Sufficient, But Not Greater Than Necessary, to Satisfy the Goals of Sentencing**

The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), have dramatically altered the district court's role in sentencing. Taken together, these cases make it clear

that district court judges now have the ability, as well as the duty, to exercise their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."  Section 3553(a)(2) states that such purposes are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *see also, e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (describing the "overarching statutory charge for a district court").

The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564.  While "district courts still 'must consult [the] Guidelines and take them into account when sentencing,'" *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker*, 543 U.S. at 264), the district courts "may not presume that the Guidelines range is reasonable," *Gall*, 128 S.Ct. at 596-97 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)).  And, as the Court's subsequent decisions in *Gall* and *Kimbrough* demonstrate, *Booker*'s consultation requirement is not intended to limit the district court's sentencing discretion.

The Court in *Gall* emphasized the importance of deferring to the judgment of the sentencing courts, explaining:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.  The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.  "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."

*Gall*, 128 S. Ct. at 597-98 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2469 (2007)).  In *Gall*, the

Supreme Court acknowledged that the sentence must be based on "an individualized determination based on the facts." *Id.* at 597.

In this case, a sentence of 12 months and one day, which is equivalent to a variance of one offense level (3 months) is sufficient to meet the purposes of sentencing. Some of the factors which the Court should consider are discussed below.

**1.    Nature and Circumstances of the Offense**

Under 18 U.S.C. §3553(a), the Court should consider the nature and circumstances of the offense in determining an appropriate sentence. In this case, the offense is escape. The conduct involved Mr. Redden signing out from a non-secure facility where he was housed and not returning. Contrary to what is included in the PSR, the offense conduct does not involve threats, nor does it involve his prior conduct or write-ups received while in custody. *See* PSR ¶¶5-17. Rather, the offense conduct is very narrow. *See* PSR ¶¶16-17. The offense is not a crime of violence, nor was any violence threatened. While he was a fugitive for a week, Mr. Redden did not commit any other offenses.

In addition, the circumstances of the offense include the fact that Mr. Redden had been in custody for 16 years and felt stressed. In addition, the pressure of needing to find a job in 15 days was too much. Coles Report at p.8. Given the nature and circumstances of the offense, a sentence of 12 months and 1 day is sufficient.

**2.    The History and Characteristics of Charles Redden**

Under 18 USC §3553(a), the history and characteristics of Charles Redden is a separate factor for the Court to consider in fashioning a fair and just sentence. Even before the Court had the discretion it now has under *Booker* and its progeny, the Ninth Circuit determined that severe abuse and neglect may be a reason to sentence an individual below the guideline range. *See, e.g. United States v. Walter*, 256 F.3d 891 (9th Cir. 2001)(court departed from 41 months because it determined that beatings and sexual abuse constituted the type of extraordinary circumstances justifying consideration); *United States v. Roe*, 976 F.2d 1216 (9th Cir. 1992)(court clearly erred in holding it did

not have discretion to depart downward where defendant suffered extraordinary sexual abuse as a child); *United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 81, 84)("It seems beyond question that abuse suffered during childhood - at some level of severity - can impair a person's mental and emotional condition"); *Santosky v. Kramer*, 455 U.S. 745, 789 (1982)("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens.")

In the present case, Charles Redden suffered physical and sexual abuse as a child. As discussed in the Coles Report, the roots of the offense in this case, i.e. impulsively walking away from Cornell and not returning, can be found in Mr. Redden's traumatic background. *See* Coles Report at p.11. ("these . . . personality structures most often have their etiological underpinnings in very traumatic childhoods. . . He was repeatedly abused as a child . . .His mother provided little to no protection . . he never learned how to metabolize his own . . .emotional states and, in turn, . . .has led a life of impulsive acting out, generally self-destructive in nature.")

The courts have recognized the connection between traumatic childhood and resulting diminished capacity in determining that it may be appropriate to sentence a defendant who suffers from diminished capacity below the guideline range. *See, e.g. Walter*, 256 F.3d 891 (abuse constituted extraordinary circumstances justifying court's consideration of psychological effects to establish diminished capacity); *States v. Menyweather*, 431 F.3d 692, 698 (9th Cir. 2005)(district court departed eight levels to probation based in part on post traumatic stress syndrome); *United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993)(criminal justice system long has meted out lower sentences to persons who although not technically insane are not in full command of their actions.); *United States v. Lewinson*, 988 F.2d 1005 (9th Cir. 1993)(departure where defendant suffered from depression even though mental disease not severe and did not affect defendant's ability to perceive reality); *Caro v. Woodford*, 280 F.3d 1247, 1258 (9th Cir. 2002)(more than any other singular factor, mental defects have been respected as a reason for leniency).

In this case, it is clear from the PSR as well as from the Coles Report that Mr. Redden suffers

from diminished capacity which contributed to the commission of the offense. The Court should show lenity and sentence Mr. Redden one level below the guideline range.

**3. A sentence of 12 months and one day custody is sufficient to show respect for the law, just punishment and adequate deterrence, protect the public and provide Mr. Redden with needed treatment in the most effective manner**

18 U.S.C. §3553 provides that the Court shall consider the need for a sentence to promote respect for the law, provide just punishment for the offense and afford adequate deterrence to criminal conduct. 18 U.S.C. §3553(a)(2)(A) and (B). Furthermore, the Court is required to consider the need to provide a defendant with needed educational or vocational training or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(D). All of these factors support a sentence of 12 months and 1 day in custody.

For example, the requested sentence is sufficient to show respect for the law given that the offense involved walking away from a half-way house. Moreover, Mr. Redden did not commit the offense in this case out of lack of respect for the law but because he was not used to being out of custody, was stressed and panicked. The sentenced requested shows appropriate respect for the law.

Such a sentence also provides adequate deterrence to Mr. Redden and others. As the Coles Report and Mr. Redden himself indicate, the offense was committed because Mr. Redden needed a transitional program to adapt to life outside of custody slowly while addressing substance abuse and mental health issues. Such a program is available at the New Bridge Foundation which has accepted Mr. Redden. It is a program which generally runs 18 months, at least 6 of which is in the residential facility. It is Mr. Redden's best chance for success. Mr. Redden needs no further deterrence. Furthermore, this sentence also represents more than just punishment for the reasons discussed above.

One factor to be considered by the Court is whether a sentence of 12 months and 1 day in custody is adequate to protect the public given Mr. Redden's history. Such a sentence is adequate to protect the public. As discussed in the Coles Report, Mr. Redden has never actually committed crimes of violence. In addition, Dr. Coles administered a number of tests which predict violent behavior, and also spoke to Mr. Redden at length. The Coles Report adequately supports a

U.S. v. Charles Redden, CR 07-00802 VRW;      – 9 –
Sentencing Memorandum

determination that the sentencing factor which centers around protecting the public does not require Mr. Redden to serve more than 12 months and 1 day in custody. Coles Report at p. 12-13.

Finally and perhaps most significantly, 18 U.S.C. §3553 includes among the relevant factors the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment "in the most effective manner." Here, Mr. Redden's best chance for success is to participate in a transitional program such as New Bridge. New Bridge has accepted Mr. Redden into the program. As the government correctly observes, given the amount of time that Mr. Redden has spent in custody already, "it might be more appropriate for the defendant to begin the transition sooner rather than later." Govt. Memo at p. 3-4.

In light of the mitigating factors discussed, including the abuse which Mr. Redden has suffered and his diminished capacity, Mr. Redden asks the Court to sentence him to 12 months and 1 day in custody. He further asks the Court to include as a condition of his supervised release that he go directly from custody to New Bridge Foundation where he participate in its dual-diagnosis program.

## CONCLUSION

For all of the reasons described above, Mr. Redden respectfully urges the Court to sentence him a term of twelve months and one day in custody.

Dated: August 1, 2008

        Respectfully submitted,

        BARRY J. PORTMAN
        Federal Public Defender

         /S/

        JOYCE LEAVITT
        Assistant Federal Public Defender